UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IRVIN B., : | |
|       Plaintiff, : | |
| : | |
|       v. : | C.A. No. 24-00225PAS |
| : | |
| FRANK BISIGNANO, : | |
| Commissioner of the Social Security : | |
| Administration, : | |
|       Defendant. : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On August 2, 2022, Plaintiff Irvin B., then forty-two years old, filed an application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act"), alleging that he became disabled on September 10, 2021. Tr. 10, 172. As a child, Plaintiff had been a war-time refugee in Bosnia and undisputedly suffers post-traumatic stress disorder ("PTSD"), as well as depression and anxiety; towards the end of the period in issue, he also developed back pain. Tr. 470-71, 526, 567-69. As an adult, Plaintiff had consistent, well-compensated employment as a retail store manager, until he was laid off following the onset of the COVID pandemic. See Tr. 38, 471. The medical record reflects Plaintiff's report that he was looking for work after he was laid off. Tr. 471. By October 2022, Plaintiff reported to providers that he had enrolled in "an online baccalaureate course- in graphic arts," Tr. 509, that he was on the Dean's List, and was "working free-lance while going to school." Tr. 518; see Tr. 541 (in July 2023, provider's notes indicate Plaintiff reported his occupation was "Graphic Design self employed").

In support of his application, Plaintiff alleged disability due to depression and PTSD. Tr. 208. An administrative law judge ("ALJ") considered the medical and other evidence of record and found that Plaintiff suffered not just from PTSD and depression, but also from the additional

severe impairments of anxiety, lumbar spondylosis and obesity, but that Plaintiff has retained the RFC[1] to perform light work with additional exertional and postural limitations, as well as adaptation limits and significant social limits (no contact with the public and a limitation to independent work with no tandem tasks). Tr. 12, 14. Neither the ALJ's Step Two analysis nor his RFC analysis mentions the symptom and/or diagnosis of headache or migraine.

Plaintiff challenges the ALJ's determination for three reasons. First, Plaintiff contends that the ALJ erred by ignoring the impairment of headache/migraine not only at Step Two and for the RFC, but particularly in failing to perform a Step-Three analysis of whether his headaches/migraines medically equal Listing 11.02 (epilepsy).[2] Second, Plaintiff claims that the ALJ's RFC does not adequately reflect the moderate social limits impacting interactions with coworkers and supervisors found by the non-examining expert psychologists. Third, Plaintiff contends that the ALJ erred in failing to include work-preclusive off-task/absenteeism limitations based on the record references to Plaintiff's irritability and anger, despite the lack of any expert opinion to support such limits.

The Commissioner's counter motion asks the Court to affirm the ALJ's decision because it is consistent with applicable law and well supported by substantial evidence. See ECF No. 10. The parties' motions are pending before me on consent pursuant to 28 U.S.C. § 636(c).

**I.    Standard of Review**

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42

---

[1] RFC refers to "residual functional capacity," which is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[2] Listing 11.02 applies to the analysis of epilepsy. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02.

U.S.C. § 405(g); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018).  "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding.  Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103).  Thus, substantial evidence is more than a scintilla – it must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).  The determination of substantiality is based upon an evaluation of the record as a whole.  Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2020); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied).

The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive. . . because the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." I.A. v. Comm'r of Soc. Sec. Admin., Civil Action No. 23-10170-FDS, 2024 WL 38746, at *4 (D. Mass. Jan. 3, 2024) (internal quotation marks and citation omitted), aff'd sub nom. Askew v. O'Malley, No. 24-1051, 2024 WL 4362258 (1st Cir. Sept. 23, 2024).  The Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does

not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).

## II. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505(a). The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-11.

### A. Five-Step Evaluation Sequence

For claimants aged eighteen and over, the ALJ must follow a five-step process in evaluating a claim of disability. See 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 404.1520(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 404.1520(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled.

Id. § 404.1520(a)(4)(iii).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled.  Id. § 404.1520(a)(4)(iv).  Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted.  Id. § 404.1520(a)(4)(v).  Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 143-44 (D. Mass. 2003) (five-step process applies to SSI and DIB claims).

### III. Analysis

#### A. Headaches/Migraines

The Court begins by focusing on the factual background to Plaintiff's argument based on the ALJ's failure to mention headaches or migraines in the decision.

A year before the period in issue, on September 28, 2020, Plaintiff complained that he was "very anxious and stressed at work" and he was getting "[p]hotophobic throbbing" intermittent headaches that his primary care physician opined were "unlikely organic migraine[, m]ore likely stress and tension headache."  Tr. 267.  By the next appointment with the same physician, the treatment focus was on anxiety; there is no mention of headache or migraine.  Tr. 269-70.  At the next appointment (telephonic), not with the physician but with a physician assistant ("PA"), in November 2020 (still well before the period in issue), this PA noted Plaintiff's complaint of increased headache (along with body aches); unlike the physician, the PA labeled the complaint as "migraine," and prescribed Imitrex (despite Plaintiff's request for Ubrevly).  Tr. 271, 274.  The PA does not include in his notes any description of the basis for a diagnosis of migraine or of the severity or characteristics of the headaches other than that they

5

are "intermittent . . . with photo sensitivity." Tr. 271. On December 1, 2020, still well before the period in issue, the PA switched Imitrex to Ubrevly; a year later, he switched it again to Nurtec (due to cost and insurance), which he opined "works well" in controlling migraine. See Tr. 326-327 ("Trialed on Nurtec. Works well"); Tr. 329 ("started on Ubrelvy for migraines. Insurance wouldn[']t cover. Will trial on [N]urtec."). Importantly, this evidence was not ignored during the administrative processing of Plaintiff's disability application – the initial phase review analysis of the evidence confirms that this pre-onset treatment of headaches appears in the record. Tr. 76.

For the rest of the period covered by the record, the PA continued the prescription for Nurtec and continued to list migraine as one of Plaintiff's "[p]roblems." E.g., Tr. 370-72, 380-81. However, after December 1, 2020, and continuing throughout the period in issue (beginning on September 10, 2021), Plaintiff's complaints of headaches or any migraine symptom never appear in the record again.[3] To the contrary, the treating record for the period in issue makes clear that Plaintiff never again complained of, and often affirmatively denied, that he was experiencing headaches or migraine as a symptom or condition.[4] See, e.g., Tr. 278-79 (on September 17, 2021, primary care physician notes "[h]eadache denies"; physician opines, "cleared to return to work without restrictions"); Tr. 301-02 (in November 2021, no headache reported on review of symptoms); Tr. 326-27 (in January 2022, no headache reported on review of symptoms); Tr. 312 (in March 2022, "[h]e reports . . . no headaches"); Tr. 373 (in April 2023, no headache reported on review of symptoms); Tr. 380-81 (in February 2023, Plaintiff

---

[3] The Court has reviewed the citations that the parties have highlighted and has independently scoured the record – this review confirms that, during the period following the date of alleged onset of disability, there is no reference to the symptom of headache or migraine except as mentioned infra in footnote 4.

[4] There are two exceptions: Plaintiff reported the symptom of headache once when he had a cold, Tr. 321, and once when he was COVID-positive, Tr. 383.

affirmatively denies headache on review of symptoms). Further, there is no evidence that Plaintiff took Nurtec (or any other migraine medication) during the period in issue and his filings and statements establish that he did not. E.g., Tr. 210, 244 (on application, Plaintiff listed all prescription and non-prescription medications he was then taking; no reference to any migraine medication, including Nurtec); Tr. 222 (in function report, Plaintiff asked to list all medications he was then taking with side effects; no reference to any migraine medication, including Nurtec). Also significant is the intake report prepared by Plaintiff's psychiatric providers during the period in issue; it reflects that Plaintiff himself reported "no diagnosis . . . of migraine headache." Tr. 456. This dearth of evidence of headache or migraine during the period in issue is confirmed by the lack of any opinion from any source that, during the period in issue, Plaintiff's ability to function was impacted at all by headache or migraine.

      Consistent with the medical record's complete lack of any suggestion of work-impairing headache/migraine during the period is issue are virtually all of Plaintiff's statements made in support of his application. In his disability application, Plaintiff was asked to list every physical and mental condition that limits his ability to work; he listed depression and PTSD but did not include headache or migraine. Tr. 208; see Tr. 242, 250 (no change in conditions since application). In his function report signed on September 3, 2022, Plaintiff described depression, lack of focus, anxiety, PTSD, lack of motivation, nightmares, irritability, and inability to deal with stress, but he makes no mention of headaches or migraine. Tr. 215-22. And at the hearing, Plaintiff responded to the ALJ's pivotal question regarding the reasons he cannot work and testified that he cannot work because of difficulty walking, back pain, depression, anxiety, and issues with controlling anger and dealing with stress, but did not mention headache. Tr. 49-50.

Confirming that Plaintiff was not impaired at all by headache/migraine is his attorney's failure to mention migraines or headaches during the opening statement phase of the hearing.[5]

The only exception came later in the hearing when Plaintiff responded to a question about side effects of medication: in his answer, he spontaneously mentioned that, when he experiences stress, he has headaches and that this impacts his ability to "perform tasks." Tr. 60-61 ("I also get a lot of headaches when it comes to a stress situation . . . . I have a lot of migraines when I'm very stressed out, that keeps me from being able to perform tasks definitely."). However, although the ALJ's decision does not highlight Plaintiff's specific reference to headache as a symptom of anxiety triggered by stress, the ALJ did find that Plaintiff's anxiety is a severe impairment and did consider that, in connection with anxiety, Plaintiff "alleges . . . difficulty dealing with stress." Tr. 14-15. As to this allegation, the ALJ found that it is a subjective statement that is "not entirely consistent with the medical evidence." Tr. 15-16. Plaintiff has not challenged this well supported (by the evidence summarized *supra*) finding.[6]

Social security applicants have the burden to prove disability. 20 C.F.R. § 404.1512(a). Thus, when a claimant presents no evidence of a limitation or restriction of a specific functional capacity during the period in issue, and there is no information in the record that there is such a limitation or restriction, the ALJ "must consider the individual to have no limitation or restriction with respect to that functional capacity." SSR 96-8P, 1996 WL 374184, at *1 (July 2, 1996); see Mosconas v. Saul, No. 19-2049, 2020 WL 6255298, at *1 (1st Cir. Sept. 15, 2020) (claimant "had the burden of establishing the extent of her limitations, which the ALJ then used to

---

[5] Plaintiff's attorney's opening statement focused on anxiety, PTSD and worsening low back pain. Tr. 38.

[6] The Court notes that Plaintiff's testimony that headaches were triggered by stress due to anxiety appears to be based on Plaintiff's pre-onset headache complaint in the fall of 2020, which, despite the physician's opinion that it was unlikely to be migraine, was resolved ("well controlled" with no further complaints) by the PA's decision to treat it as migraine and to prescribe Imitrex, then Ubrevly, and then Nurtec when Ubrevly was denied by insurance. See Tr. 267-330.

determine her RFC"). In this case, other than the hearing testimony about stress-induced "migraines," which is amply contradicted by the balance of the record (such as Plaintiff's reports to providers of the absence of headaches during the period in issue), Plaintiff points to nothing to suggest that he was experiencing headache or migraine symptoms at any time during the period in issue. Nor has the Court discovered such evidence during its own review of the record. Thus, this case is significantly different from the cases on which Plaintiff relies. For example, in Dunn v. Colvin, Civil Action No. 15-cv-13390, 2016 WL 4435079, at *1, *8-12 (D. Mass. Aug. 19, 2016), the record established significant migraine symptoms (including nausea and vomiting) actively reflected in the record for the period in issue, coupled with the treating physician's opinion that these migraines symptoms would significantly impact the ability to work; in light of such evidence, the court remanded the matter for further analysis of the migraines at Steps Two and Four. Id. at *1, 8-12. Similarly, in Resendes v. Astrue, 780 F. Supp. 2d 125, 129, 139, 143-44 (D. Mass. 2011), the ALJ erred in, on one hand, finding the headaches to be severe (based on evidence for the period in issue such as nausea and persistence of headache over more than a day) yet, on the other hand, ignoring the same evidence in establishing the claimant's RFC.

Based on the foregoing, the Court finds that the ALJ did not err by failing to perform a Step-Two analysis of a symptom that Plaintiff neither mentioned nor specifically denied during communications with treating sources throughout the period in issue and that neither Plaintiff nor his attorney described as a work-limiting impairment on application, in the function report or during the ALJ's hearing. The Court further finds that this deficiency is not overcome by Plaintiff's appropriately discounted testimony that stress triggers "migraines" that keep him from performing tasks. Based on the foregoing, the Court finds no error in the ALJ's omission of headache/migraines in his Step-Two analysis, no error in the ALJ's failure to perform a Listing

analysis of headaches/migraines at Step Three and no error in the ALJ's failure to adopt an RFC limitation to accommodate headaches/migraines.

The Court pauses to briefly address separately an undeveloped contention based on the heading of Plaintiff's headache/migraine argument. The argument is premised on the ALJ's alleged Step-Two headache/migraine error (which argument the Court has rejected) and states that the ALJ made a corollary Step-Three error by failing to consider whether Plaintiff's severe headache/migraine symptoms meet or equal the listing for epilepsy (Listing 11.02). Because the Court finds no Step-Two error, there is no need to consider this argument further. Nevertheless, the Court notes that there is also no Step-Three error because the finding that Plaintiff's migraine diagnosis medically equals the listing for epilepsy would require specific evidence to support such a finding, which is entirely missing from the record in this case. See SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 17, 2017).

## B. RFC Limits Based on Moderate Social Limitation

Plaintiff's second challenge – to the ALJ's RFC based on the alleged failure adequately to reflect the moderate social limits impacting interactions with coworkers and supervisors found by the non-examining expert psychologists – is equally unavailing.

At both the initial and reconsideration phases, the non-examining psychologists performed both a Psychiatric Review Technique ("PRT") and a mental RFC analysis. Their PRT rated Plaintiff's social limits as moderate. Tr. 76-77, 84-85. For their RFC findings, both found moderate limits in the ability to interact with the public, respond to supervisors and get along with coworkers. Tr. 78, 86. With these RFC findings, they added a narrative explanation with a more nuanced description of the work Plaintiff still can and cannot do:

> Claimant has a history of a trauma and can become irritable with others.
> Claimant would work best in environments in which direct contact with the public

>is minimal and he is able to work independently in less socially demanding settings.

Tr. 79, 86.

The ALJ's decision is clear that he found these expert RFC findings to be persuasive and his RFC appears to track them: "must have no contact with the public; is able to work independently with no tandem tasks." Tr. 14.  Thus, while more truncated than what the experts wrote, the ALJ's language clearly incorporates the experts' limits on extensive contact with supervisors (through "work[ing] independently") and with coworkers (through "no tandem tasks").  Further, the vocational expert identified available work – marker, router and small products assembler – none of which is defined in the Dictionary of Occupational Titles ("DOT") to require extensive contact with supervisors and coworkers and which is therefore consistent with the need for a less socially demanding setting; Plaintiff does argue otherwise.  See U.S. Dep't of Lab., DOT (4th ed., rev. 1991) § 209.587-034, 1991 WL 671802 (marker); § 222.587-038, 1991 WL 672123 (router); § 706.684-022, 1991 WL 679050 (small products assembler).  Accordingly, to the extent that the ALJ's more concise formulation of the limits in the experts' findings conceivably may be seen as error, the error is harmless.  See Jason D. v. Soc. Sec. Admin. Comm'r, No. 2:18-cv-00371-DBH, 2019 WL 1650074, at *4 (D. Me. Apr. 17, 2019) (any error in ALJ's RFC social limits – limited to working independently with only occasional supervision and no tandem tasks, but capable of frequent public interaction – is harmless because jobs identified at Step Five are not defined to require public interaction), aff'd sub nom. Jason D. v. Berryhill, No. 1:18-CV-371-DBH, 2019 WL 1982518 (D. Me. May 2, 2019).

Based on the foregoing, the Court finds that the ALJ did not fail to accommodate the experts' findings pertaining to social limits on the ability to deal with coworkers and supervisors in his RFC.  Relatedly, the Court also rejects Plaintiff's contention that the Court should focus

11

exclusively on the PRT findings and ignore the experts' RFC narrative explanation, which sets out the functional limits "in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." Askew v. O'Malley, No. 24-1051, 2024 WL 4362258, at *1-2 (1st Cir. Sept. 23, 2024) (internal quotation marks omitted) (rejecting argument that "incorrectly focuses on the state agency consultants' worksheet ratings instead of the consequential narrative section") (citing cases). This aspect of the ALJ's decision is affirmed.

C.  **Absenteeism/Off-Task Time**

Based on the record references to Plaintiff's irritability and anger, despite the lack of any treating provider or other expert opinion to support such limits, Plaintiff argues that the ALJ should have found that these symptoms would cause him to be off-task and/or absent at a work-preclusive rate and included such limits in the RFC.

The problem with this argument is that the ALJ acknowledged and weighed the substantial evidence of Plaintiff's significant issues with irritability, difficulty interacting with others and anger,[7] together with the other substantial evidence, including the mental status examination observations[8] of cooperative affect and euthymic mood,[9] as well as Plaintiff's activities of daily living.[10] Based on this weighing of the substantial evidence, the ALJ found that Plaintiff retained the mental RFC to sustain a normal workday/workweek without undue off-

---

[7] E.g., Tr. 14 ("claimant reported problems controlling his anger"); Tr. 17 ("he continued to report problems handling anger appropriately"); Tr. 86 ("can become irritable with others"); Tr. 529 ("[i]ncreasing irritability").

[8] The mental status examination is an objective clinical assessment of an individual's mental ability, based on a health professional's personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation." Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7, 2022) (internal quotation marks omitted), adopted by text order (D.R.I. Mar. 31, 2022).

[9] E.g., Tr. 473 ("mood not angry"); Tr. 478-79 ("Mood: Euthymic . . . Behavior: . . . Cooperative"); Tr. 482-83 ("Mood: Euthymic . . . Behavior: Cooperative"); Tr. 536 ("mood not angry . . . mood not irritable").

[10] E.g., Tr. 14 (able to drive, go out alone, shop in stores); Tr. 518 ("on Dean's List . . . doing well with wife and children . . . [w]orking free-lance while going to school").

task time or absenteeism.  In addition to the ALJ's weighing of the other evidence of record, this finding also relies appropriately on the findings of the non-examining experts.  Tr. 79, 86 (despite irritability, Plaintiff "is able to work independently in less socially demanding settings.").  Further, while Plaintiff is right that the record does reflect his many reports of angry or irritable mood, the ALJ's decision clearly demonstrates that he acknowledged, carefully considered and accommodated these symptoms in the RFC finding that Plaintiff can work independently with no tandem tasks.

      Based on the foregoing, the Court finds that there is no error in the ALJ's approach to these symptoms, as well as that there is no error in the ALJ's failure to include off-task time or absenteeism in the RFC.  See Austin B. v. O'Malley, C.A. No. 23-519-PAS, 2024 WL 3329754, at *5 (D.R.I. July 8, 2024) (rejecting argument that claimant would be off-task due to psychotic symptoms because no medical evidence supports such limit and no source, treating or otherwise, has opined to such limit and because non-examining expert finding of ability to work necessarily means materially excessive off-task time was considered and not found); Roberta L. v. O'Malley, C.A. No. 23-234-PAS, 2024 WL 3886654, at *7-8 (D.R.I. Aug. 20, 2024) (with no supportive opinion and no treating notes containing substantial evidence of absenteeism, coupled with expert finding that claimant can sustain normal work routine with limitations, ALJ did not err in failing to include absenteeism in RFC), adopted by text order (D.R.I. Sept. 4, 2024); Steven A. v. O'Malley, C.A. No. 23-544-WES, 2024 WL 4344865, at *4-5 (D.R.I. Sept. 30, 2024) (experts' findings regarding degree to which claimant would be off-task/absent are embedded in their finding that claimant retains mental capacity to work with specified limits meaning that materially excessive off-task time and absenteeism were considered and not found), adopted by text order (D.R.I. Oct. 18, 2024).  In effect, Plaintiff's argument amounts to a request

13

that the Court improperly reweigh the evidence of irritability and anger to find that these symptoms would result in absenteeism/off-task time not supported by any opinion and contradicted by the non-examining experts. See Thomas P., 2022 WL 92651, at *8. This the Court declines to do.

## V.     Conclusion

Based on the foregoing analysis, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 9) is DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 10) be GRANTED. The Clerk is directed to enter judgment in favor of the Commissioner.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
July 21, 2025